UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**Miguel A. Cintora, et al.,**
   **Plaintiff,**

     vs.                08-cv-2298

**Michael Downey, et al.,**
   **Defendants.**

## MEMORANDUM OPINION AND ORDER

  Before the court are the defendants, A Ahrens, Emery, J Most and Villafuerte's summary judgment motion [48], the plaintiff's response [63] and the defendants' reply [64]. Defendants Corporal Ahrens, and Officers Emery, Most and Villafuerte move for summary judgment on Cintora's excessive force and failure to protect claims against them. Defendants assert that they did not physically touch Plaintiff, much less harm him and therefore lacked personal involvement in the alleged use of force. Further, Defendants assert they were not afforded a reasonable opportunity to protect Cintora from Officer O'Connor's alleged use of force. Defendant Brandon O'Connor acknowledges that questions of fact preclude him from moving for summary judgment as to Plaintiff's excessive force claim.

### Standard

  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

  "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely

allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

Background

Pursuant to Section 1983, Plaintiff Miguel A. Cintora filed a complaint against Defendants Corporal Angela Ahrens, Correctional Officer Brandon O'Connor, Correctional Officer Manuel Villafuerte, Correctional Officer Antonio Emery and Correctional Officer Jeremy Most, claiming excessive force and failure to protect. On June 19, 2008, the Plaintiff was tased by Defendant O'Connor, who was accompanied by Defendants Ahrens, Villafuerte, Emery and
Most at Jerome Combs Detention Center. Plaintiff then fell, hit his head and was temporarily unconscious, during which time he was taken back to his cell and placed in lockdown. Defendants Angela Ahrens, Manuel Villafuerte, Antonio Emery and Jeremy Most have moved for summary judgment on the excessive force and failure to protect claims. The Plaintiff opposes this motion because he believes the defendants' failure to intervene when Defendant O'Connor
tased the Plaintiff renders them culpable under § 1983.

Statement of Material Undisputed Facts

1. On June 19, 2008, Plaintiff had a scheduled visit for 6:00 p.m. with his parents at his location of incarceration, the JCDC. (Cintora's Deposition, pp. 15, 16 attached to Defendants' Statement of Facts as Exhibit A.)
2. At around 12:00 p.m., Cintora contacted Officer Taylor at the front desk and spoke with an Officer Taylor who informed him that he was allowed to keep his 6:00 p.m. visit and that he would be taken to another unit. (Id.)
3. Then, at approximately 5:50 p.m., Officer Montalvo contacted Cintora and told him that he would have to contact his parents to reschedule his appointment. (Id. at p. 17.)
4. Officer Ahrens told Officer Montalvo that insufficient officers were available to accommodate Cintora's visit. (Id.)

2

5. Officer Montalvo then let Cintora out of his cell to call his parents who were already at the prison. (Id.)
6. While on the phone with his parents, Officer Montalvo told Cintora that he needed to return to his cell. (Id. at pp. 18, 29, 118.)
7. Plaintiff refused to lock down, stating that he needed to speak with a supervisor first before he would lock down. (Id.)
8. Before contacting Corporal Ahrens, Officer Montalvo asked Cintora if he was sure he was not going back to his cell until he spoke to a supervisor. (Id. at p. 19.)
9. Cintora reiterated his desire to speak to a supervisor first. (Id. at pp. 19-21.)
10. Officer Montalvo then contacted Corporal Ahrens to inform her of Cintora's request and refusal to lock down. (Id.)
11. After about two minutes elapsed, Corporal Ahrens, accompanied by Officers O'Connor, Villafuerte, Emery and Most entered Flex C-Pod where Cintora was on the phone. (Id. at pp. 21, 24.)
12. Officer Emery believed the taser would probably be deployed at Plaintiff before [Emery] entered the room[1]. (See Plaintiff's Exhibit 2, Emery Deposition, p. 17.)
13. Officer O'Connor entered the Pod where the plaintiff was located with his taser already drawn and called Cintora's name at which time Cintora turned to face him. (See Plaintiff's Exhibit 1, O'Connor Deposition, pp. 12-13.)
14. When ordered to lock down, Plaintiff stopped his conversation on the phone and turned to look at the officers. (See Plaintiff's Exhibit 1, O'Connor Dep., p. 13.)
15. Plaintiff neither said anything nor made any type of hostile movement toward the officers before being tased[2]. (Id.)
16. According to Cintora, he was then tased. (Id.)
17. At the time Officer O'Connor entered the cell, there were only ten feet between Cintora and Officer O'Connor. (Defendants' Exhibit A, Cintora's Deposition, p. 31.)
18. Cintora testified Officer O'Connor tased him immediately after opening the door to his pod without any warning or time to submit to lockdown. (Defendants' Exhibit A, Cintora Dep. at p. 35.)

---

[1]Defendants assert that this fact is immaterial. They assert that whether or not Emery believed the taser may be deployed before entering the cell block is irrelevant to whether he knew a constitutional violation was being committed and whether he had an opportunity to intervene. Further defendants argue that knowledge that a fellow officer is prepared to act appropriately when confronting a potentially violent an disobedient inmates does not translate to knowledge that excessive force will be used or create time for intervention before excessive force is used. The court disagrees and finds this fact is material.

[2]Defendants assert that this fact is immaterial. They assert that plaintiff's hostility or lack thereof is irrelevant to whether Ahrens, Emery Most and Villafuerte had an opportunity to intervene before Officer O'Connor tased Plaintiff. The court disagrees and finds this fact is revelevant.

3

19. None of the other officers present at the tasing physically harmed Cintora in any fashion. (Id. at pp. 26-27, 41. )
20. Cintora believes that these other officers committed excessive force towards him merely because of their presence at the incident. (Id. at p. 27. )
21. Officer O'Connor tased Cintora so quickly that his fellow officers would not have had sufficient time or warning to protect Cintora from Officer O'Connor[3]. (Id. at pp. 96-98.)
22. In her deposition, Officer Montalvo stated there was a time period of around two minutes between the time the Defendants entered the room in which Plaintiff was housed and the time Officer O'Connor tased Plaintiff. (See Plaintiff's Exhibit 3, Montalvo Deposition, p. 13.)

Immaterial Facts

23. It is the policy of Jerome Combs Detention Center to deploy a taser at an inmate before using physical force[4]. (See Plaintiff's Exhibit 1, O'Connor Dep., p. 21.)

Discussion and Conclusion

The central question in an excessive force claim by an inmate is whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *See DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999), *see also Outlaw v. Newkirk*, 259 F.3d 833, 839-40 (7th Cir 2001) (distinguishing an instance where a correctional officer deliberately and perhaps unnecessarily applied a relatively minor amount of force from cases in which the force was "repugnant to the conscience of mankind." *citing Hudson*, 503 U.S. at 10 (ruling that correctional officers applied more than *de minimis* force when they punched and kicked an inmate while holding him in place, causing bruises,

---

[3]Plaintiff disputes this fact. He asserts that while he did state in his deposition that there would not have been time for Defendant O'Connor's fellow officer to protect him from Officer O'Connor, he first testified that he did not know if defendants Ahrens, Emery, Most and Villafuerte could have protected him from Defendant O'Connor's tasing. (See Defense Exhibit 1, Cintora Deposition p. 97). Plaintiff assert that this creates a genuine factual dispute over whether or not the fellow officers would have had sufficient time or warning to protect Cintora from Officer O'Connor. The Plaintiff cannot dispute this statement. In his deposition, Plaintiff first testified that he did not know if the defendants could have protected him, but he later clarified that there would not have been time for these defendants to protect him. (See Defense Exhibit 1, Cintora Depostion, p. 97.)

[4]Plaintiff lists this fact as material. However, the court agrees with the defendants that the policy and practice of Jerome Combs Detention Center regarding using the taser before using physical force is irrelevant to whether the defendants had an opportunity to intervene before O'Connor tased Plaintiff.

4

swelling, loosened teeth and a cracked dental plate), and *Thomas v. Statler*, 20 F.3d 298, 302 (7th Cir. 1994) (holding that jurors could reasonably conclude that the prison guard acted maliciously and sadistically to cause harm where the plaintiff claimed that the guard punched him in the mouth with a clenched fist while he was being held immobilized by at least nine other people). In the present circumstance, Plaintiff argues that Defendants' mere presence at the scene constituted excessive force. Cintora acknowledges, however, that these correctional officers never physically touched him. Therefore, Plaintiff has not and cannot even apply the central question in any excessive force analysis, namely, whether *force* was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *DeWalt*, 224 F.3d at 619. Because Plaintiff cannot even establish that these Defendants applied a scintilla of force to him, he clearly cannot establish that they applied force in "a malicious and sadistic manner with the intention of causing harm." *DeWalt*, 224 F.3d at 619.

Defendants are entitled to summary judgment on the plaintiff's claim of excessive force. Personal involvement in an alleged constitutional violation is required for §1983 liability to obtain. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). Plaintiff claims that Officer O'Connor tased him without warning and immediately after the calling his name. Cintora unequivocally acknowledges that the other Defendants never physically touched him. These officers' lack of involvement in the use of force, therefore, entitles them to summary judgment as to Plaintiff's excessive force claim. *Id.*

Furthermore, Plaintiff failed to address Defendants' argument that their lack of personal involvement entitles them to summary judgment on Plaintiff's excessive force claims. Therefore Plaintiff has conceded this point. "The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*, No. 02 C 4394, 2006 WL 3542332 *3 (N.D.Ill. Dec. 6, 2006) (*citing Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643, n7 (7th Cir.2006)). Accordingly, Defendants Ahrens, Emery, Most, and Villafuerte are granted summary judgment in their favor on Plaintiff's excessive force claim.

Omissions can violate civil rights. *Chavez v. The Illinois State Police*, 252 F.3d 612, 652 (7th Cir. 2001). Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Seventh Circuit has stated that bystander liability for such omissions attach only if a bystander officer had reason to know: (1) that excessive force was being used or a constitutional violation was being committed, *and* (2) that the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (emphasis added)*, citing Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005); *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). Assuming, *arguendo,* that Cintora has established the first factor, namely, that Defendants had reason to know Officer O'Connor would utilize excessive force, Cintora cannot produce facts establishing the second factor. That is, Cintora cannot prove the Defendants in the instant matter had a realistic opportunity to prevent harm from occurring to Plaintiff from Officer O'Connor's use of the taser. In fact, Cintora admitted during his

deposition that O'Connor acted so quickly that his fellow officers would not have had sufficient time or warning to protect Cintora from Officer O'Connor.

The Seventh Circuit's recent ruling in *Lewis v. Downey* illustrates this principle well. 581 F.3d at 472. There, the plaintiff inmate testified as to how quickly the defendant shot him with a taser after he ordered him off of his cell bed. *Id*. The inmate claimed to be sluggish from medication and stated he was shot before he could object that he could not get off the bed. *Id*. Declining to extend bystander liability, the *Lewis* court reasoned: "Even assuming Lewis was as sluggish as he claims, if the time between the order and the shot was so brief that Lewis could not respond, we decline to hold Officer Ayala liable for failing to respond as well." *Id*. Cintora testified at his deposition that Officer O'Connor came into his pod and immediately tased him without any time for Cintora to react. Cintora admitted that Officer O'Connor's act of tasing Cintora was so spontaneous and immediate that Officer O'Connor's fellow officers could not have intervened on Cintora's behalf. *Id.* Thus, just as the *Lewis* court so concluded and Plaintiff in the instant case, this court also concludes that Officer O'Connor's fellow officers lacked the requisite time to intervene to prevent the alleged use of excessive force. Summary judgment is therefore granted in favor of Defendants on Plaintiff's failure to protect claim.

**It is therefore ordered:**

1. Pursuant to Fed. R. Civ. Pro. 56, the defendants, A Ahrens, Emery, J Most and Villafuerte's summary judgment motion is granted [48]. The clerk of the court is directed to terminate these defendants, forthwith. **The clerk of the court is directed to enter judgment in favor of the defendants, Ahrens, Emery, Most and Villafuerte at the close of this case.** Plaintiff may proceed against the defendant, Brandon O'Connor on the claim of excessive force.
2. If the plaintiff wishes to appeal this order, he must file a notice of appeal with this court **within 30 days of the entry of judgment**. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).
3. The parties are allowed up to and including March 10, 2010 to file a proposed final pre-trial order.

Enter this 4th day of March 2010.

s/ Michael P.McCuskey
_____
Michael P. McCuskey
Chief United States District Judge